## KAUFMANN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4323.

Circuit Court of Appeals, Third Circuit.
Oct. 1, 1930.

S. Leo Ruslander, of Pittsburgh, Pa. (George R. Beneman, of Washington, D. C., and Samuel Kaufman, of Pittsburgh, Pa., of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Joe S. Franklin, Gen. Counsel, Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from an order of redetermination of the United States Board of

Tax Appeals that there were deficiencies in the returns of the taxpayer for the years 1920 and 1921.

Jacob Kaufmann died testate November 1, 1905, leaving a widow, Augusta Kaufmann, and five sons. He left a large estate consisting of real estate, stocks, and other personal property together with $320,000 of life insurance payable to his wife as beneficiary.

After making certain specific bequests, he devised the residue of his estate to his wife, Augusta Kaufmann, for life, in lieu of dower, "with the privilege of using as much of the principal * * * as she chooses to do from time to time," with remainder over to the sons.

About two years after the testator's death, Mrs. Kaufmann called her five sons together at her home and told them that they could have all of the estate, except the income from the real estate and from her separate properties. Referring to the estate of Jacob Kaufmann, deceased, she said: "You boys can have it, and I do not want to know anything about what you are doing; you can run the thing yourselves, the whole five boys, and I will take the income from the properties. You boys can run it and you can account to me for the income from these separate properties." She immediately transferred the money representing the life insurance on her husband from her own bank account to the bank account of the "Jacob Kaufmann Estate" and from that time, 1907, until she died in 1921, Mrs. Kaufmann had nothing to do with the management or income of the estate except the income from the real estate which was paid to her by Raymond M. Kaufmann, the oldest son, who had charge of the Jacob Kaufmann estate and managed it for himself and brothers.

From 1913 to 1921 Mrs. Kaufmann paid income taxes on the income actually received by her from the real estate of her husband's estate, and the five sons paid taxes on the income which each of them received, each receiving one-fifth of the income of his father's estate, except the income from the real estate retained by their mother as mentioned above.

On an audit of the tax returns filed by Mrs. Kaufmann and her administrator for the years 1920 and 1921, the Commissioner added to her income all the income received by the sons from her husband's estate, on the ground that the income was actually hers and should be accounted for by her before it was delivered to her sons. The position taken by the Commissioner and sustained by the Board

of Tax Appeals comes to this: The gift of Augusta Kaufmann to her sons of the personal property belonging to her husband's estate was invalid and did not operate as a gift inter vivos. In other words, the issue here is the determination of the legal effect of what Mrs. Kaufmann said and did with respect to the property from which the income in question was derived.

The determination of the Commissioner is presumptively correct and must be approved if supported by evidence. Ordinarily an appellate court will not reverse a judgment dependent upon the credibility of witnesses, but when there is no dispute as to the facts, and the conclusion depends upon the legal effect of undisputed facts, an appellate court will examine the facts and determine the legal effect for itself. Sanitary Company of America v. Commissioner, 34 F.(2d) 439 (C. C. A. 3); Brown Lumber Company, Inc., v. Commissioner, 35 F.(2d) 880 (App. D. C.); George Feick & Sons Co. v. Blair, 58 App. D. C. 168, 26 F.(2d) 540. In the case before us the Commissioner did not offer any testimony and there is no dispute as to the facts. Accordingly we are to consider the legal effect of undisputed facts, of what was said and thereafter done.

Mrs. Kaufmann not only had the right to the possession of the entire estate of her deceased husband, but she had power to convey it and give a good title to it. Kennedy v. Pittsburg & L. E. Railroad Co., 216 Pa. 575, 65 A. 1102; Hege v. Ickes, 267 Pa. 57, 110 A. 238. In Pennsylvania a valid gift may be made of notes, bonds, stocks, deposit certificates, life insurance policies, and nonnegotiable securities without assignment or indorsement in writing. Wells v. Tucker, 3 Bin. (Pa.) 366; Licey v. Licey, 7 Pa. 251, 47 Am. Dec. 513; Commonwealth v. Susan Compton, 137 Pa. 138, 20 A. 417. Any act on the part of the owner of a chose in action, showing not only a present intention to transfer, but that he regards himself as having carried such intention into effect, is sufficient, and written evidence of the transaction is not required. Estate of Franklin T. Malone, 13 Phila. (Pa.) 313.

The language of Mrs. Kaufmann indicates an intention to give the property in question to her sons. Her statement in conference with her boys that, "You boys can have it, and I do not want to know anything about what you are doing," and the subsequent conduct of herself and sons, are susceptible of no other logical interpretation. Both she on the one side, and the sons on the

other, understood it and acted upon it from that moment. The division of the estate then and there agreed upon was "carried out ever since that time." The bank accounts of Mrs. Kaufmann and the boys reflect this division and show that this was a genuine valid gift. All of the estate of Jacob Kaufmann, except that part retained by Mrs. Kaufmann, was managed by Raymond M. Kaufmann and he accounted for the income of it to his brothers every six months. In other words, what they did is consistent with what they said, and what they both did and said leads to the conclusion that this was a bona fide legal gift by Mrs. Kaufmann. As above stated, the transaction and subsequent conduct of the parties clearly indicate an intention on the part of Mrs. Kaufmann to make the gift and delivery, at least, constructive, of the property, and this, under the circumstances, was sufficient. Crosetti's Estate, 211 Pa. 490, 60 A. 1081; Reese v. Philadelphia Trust Company, 218 Pa. 150, 67 A. 124, 120 Am. St. Rep. 880; Yeager's Estate, 273 Pa. 359, 117 A. 67; Connell's Estate, 282 Pa. 555, 128 A. 503, 38 A. L. R. 1362. Accordingly Mrs. Kaufmann should not be taxed on the theory that all the income was hers and should have been assessed to her and thereafter given by her to the boys. O'Malley-Keyes v. Eaton (D. C.) 24 F.(2d) 436; Young v. Gnichtel (D. C.) 28 F.(2d) 789.

It is undisputed that the tax was paid on the income derived from the entire estate of Jacob Kaufmann, Mrs. Kaufmann paying the tax on the income from the part of the estate which she retained and her sons each paying the tax on the income derived from the part of the estate given to him. However, if the entire income had been assessed to one person rather than to six, the rate would have been higher and the total tax larger. The gift of Mrs. Kaufmann to her sons was made long before any income tax law was enacted, and so there was no motive whatever to escape the payment of taxes, but, on the contrary, there has been the utmost good faith at all times on the part of Mrs. Kaufmann and her sons in the transaction.

It follows that the income from that part of the Jacob Kaufmann estate which Mrs. Kaufmann gave to each of her five sons was properly included in his income tax return and should not have been included in the income tax return of Mrs. Kaufmann.

 The petitioner claims a deduction for depreciation on four buildings. Title to two of these stood in the name of her sons; title to the third was in the name of the executors of the estate of Jacob Kaufmann; and title to the fourth was in Augusta Kaufmann. She received the income during her life from all these properties.

Counsel for petitioner admits that under the decisions Augusta Kaufmann would not be entitled to a deduction on the income from the three properties in which the title was not in her name, were it not for the provision in the will that she might consume or dispose of the principal of Jacob Kaufmann's estate. But section 219(d) of the Revenue Acts of 1918 and 1921 (40 Stat. 1071 and 42 Stat. 247) requires that the net income of an estate, which is to be distributed periodically, whether or not at regular intervals, shall be included in the distributive share of the beneficiary whether distributed or not, and the tax thereon paid by the beneficiary. As beneficiary she is not entitled to a deduction for depreciation of the property. Loss due to such depreciation must fall upon the remainderman. Military Equipment Co., 2 B. T. A. 36; Frank Holton & Co. v. Commissioner of Internal Revenue, 10 B. T. A. 1317; Baltzell v. Mitchell, 3 F.(2d) 428 (C. C. A. 1); Whitcomb v. Blair, 58 App. D. C. 104, 25 F. (2d) 528; Codman v. Miles (C. C. A.) 28 F. (2d) 823.

As to the fourth property which stood in the name of Mrs. Kaufmann, she clearly would have been entitled to a deduction for depreciation, if there had been any evidence as to the value of the building on March 1, 1913, but there was not. The regulations in force at that time (article 164 of Regulations 45 and 62) provide that, in the case of property acquired by the taxpayer prior to March 1, 1913, in the absence of proof to the contrary, it will be assumed that such value as of March 1, 1913, is the cost of the property less depreciation up to that date. But there was no evidence as to the depreciation between the date of purchase in 1908, when the cost was known, and March 1, 1913. Hence its value at that date was not determined and we have no minuend from which to take the depreciation or subtrahend. What the value on March 1, 1913, was is a guess. Consequently the order of redetermination disallowing the deduction for depreciation must be affirmed.

As to including in the income tax return of Augusta Kaufmann the income received by the five sons from that portion of the estate of Jacob Kaufmann which she gave them, the redetermination of the Board is reversed, the determination of the Commissioner set aside, and the return of Augusta Kauf-

mann approved. The redetermination of the Board and determination of the Commissioner disallowing a deduction for depreciation on the real estate in her tax return is affirmed.